UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x

In re:                                                            Chapter 11

PEARL 53 LLC,                                              Case No. 20-41911-JMM

                                              Debtor.
-------------------------------------------------------x

## DEBTOR'S AMENDED PLAN OF REORGANIZATION

Pearl 53 LLC (the "**Debtor**") hereby proposes the following Chapter 11 amended plan of reorganization (the "**Plan**") pursuant to the provisions of Title 11 of the United States Code (the "**Bankruptcy Code**").  Except as elsewhere defined in this Plan, capitalized terms have the meanings given in Article I below.

## LEAD-UP TO PLAN

Prior to bankruptcy, the Debtor was a party to a certain contract (the "**Original Contract**") to purchase development property located at 53 Pearl Street, Brooklyn, NY (the "**Property**") owned by 177 Water Limited Partnership (the "**Seller**").  Following various amendments, the Original Contract, as previously modified, provided for a final pre-petition purchase price of $9,850,000 (including total deposits of $1,094,000 made by the Debtor).  Following a failed closing on March 9, 2020, the Seller declared a default.  The Debtor filed this Chapter 11 case on April 28, 2020 to challenge the Seller's purported termination of the Original Contract and/or to obtain an extension of the time to close, in order to resolve the disputes and restructure it affairs for the benefit of all parties in interest.

In bankruptcy, the Debtor commenced an adversary proceeding against the Seller [ECF #9 (Adv. Pro. No. 20-01049)], seeking, *inter alia*, a declaratory judgment relating to the central issue of whether a default was properly declared by the Seller pre-petition.  The Seller

counterclaimed against the Debtor to enforce the pre-petition default and terminate the Original Contract replete with forfeiture of the deposits.  Over the Debtor's opposition, the Seller obtained summary judgment pursuant to a Judgment and Order of the Bankruptcy Court dated August 14, 2020 finding that the Seller's declaration of default was valid.  The Debtor appealed this ruling and, during the appellate proceedings before the District Court under the proceeding entitled *Pearl 53 LLC v. 177 Water LP*, No. 20-cv-04061 (AMD) (the "**Appeal**"), reached a Settlement (as defined below) with the Seller, subject ultimately to the approval of the Bankruptcy Court. The Settlement is predicated upon the execution of a new and revised sale transaction in place of the Original Contract (the "**Revised Sale**"), under which the Debtor's designee ZB Pearl LLC (*i.e.,* the "Reorganized Debtor" as defined below for purposes of this Plan), a newly-formed entity not previously associated with the Debtor, shall purchase the Property from the Seller for the reduced purchase price of $8,533,000, including credit for $895,000 of the Debtor's prior deposits, plus a new deposit by the Reorganized Debtor of $853,000 (the "**Revised Sale Contract**").  The Revised Sale Contract is memorialized by a Purchase and Sale Agreement dated December 15, 2020, and anticipates a final closing balance of $6,785,000.

Based on the Settlement, to be approved as part of this Plan, the Reorganized Debtor shall (i) pay the balance of the purchase price for the Revised Sale to the Seller at the Closing of the Revised Sale Contract; (ii) provide monetary contributions of approximately $55,000 to the Debtor's estate to fund the following distributions and payments under the Plan: (a) one-half (up to $37,500) of the Allowed Administrative Expenses for Professional Fees (as defined below) of the Debtor's counsel incurred in the Bankruptcy Case, which have been voluntarily capped by such counsel in the net amount of $75,000 *after* deduction of the unused retainer paid to such counsel; (ii) one-half (up to $12,500) of a reserve in the amount of $25,000 established for the

treatment of Allowed General Unsecured Claims under the Plan; and (iii) one-half of the final amount of U.S. Trustee Fees (as defined below).  In order to consummate the Revised Sale, the Reorganized Debtor, with the cooperation of the Debtor, shall obtain certain acquisition/mortgage financing sufficient in amount pursuant to terms reasonable in the exercise of its discretion to consummate the purchase of the Property, defined below as the "**Exit Facility**".

Similarly, the Debtor's equity holders will provide monetary contributions of approximately $55,000 to the Debtor's estate to fund the balance of the following distributions and payments under the Plan: (i) one-half of the reserve fund established for the treatment of Allowed General Unsecured Claims under the Plan; (ii) one half of the net, capped amount of the Allowed Administrative Expenses for Professional Fees of the Debtor's counsel incurred in the Bankruptcy Case,; and (ii) one half of the final amount of U.S. Trustee Fees.

The Settlement and the purchase of the Property are integrated transactions to be implemented and consummated through the confirmation process and pursuant to the Plan.

## ARTICLE I

## DEFINITIONS

1.1.    "**Administrative Claim**" means a Claim for costs and expenses of administering the Chapter 11 case allowed under §§ 503(b) and 507(b) of the Bankruptcy Code including: (a) the actual and necessary costs and expenses incurred by the Debtor after the Petition Date; (b) compensation for professional services and reimbursement of expenses for the Debtor's legal counsel (the "**Professionals**") awarded by the Bankruptcy Court under §§ 330 and 331 (collectively "**Professional Fees**"); and (c) final U.S. Trustee Fees, calculated against the distributions to administrative claims and unsecured  creditors.

**1.2.** **"Allowed" or "Allowed Claim" "** means a Claim that is: (a) timely filed before the Bar Date, or which was scheduled by the Debtor in the Bankruptcy Schedules without being designated as contingent, unliquidated or disputed, and, in either case, a claim as to which no objection to the allowance thereof (including a request for estimation) has been filed on or before the Claims Objection Deadline; or (b) listed in any amended Bankruptcy Schedules that may be filed by the Debtor, as to which no different claim is filed by the affected creditor with an applicable prescribed time; (c) as to which any objection has been settled, waived, withdrawn or denied by a Final Order; or (d) otherwise Allowed (i) by a Final Order; (ii) by an agreement between the Holder of such Claim and the Debtor; or (iii) pursuant to the terms of the Plan.

**1.3.** **"Bankruptcy Code"** or the **"Code"** means title 11 of the United States Code, 11 U.S.C. §§101 et seq.

**1.4.** **"Bankruptcy Court"** means the United States Bankruptcy Court for the Eastern District of New York.

**1.5.** **"Bankruptcy Rules"** means the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court.

**1.6.** **"Bankruptcy Schedules"** mean the schedules of assets and liabilities, lists of executory contracts and unexpired leases, statements of financial affairs, and related information filed by the Debtor pursuant to Bankruptcy Rule 1007  (ECF No. 1), as same may have been amended or supplemented.

**1.7.** **"Bar Date"** means the date to be fixed by the Court for the filing of proofs of claim.

**1.8.** **"Claim"** means a claim against the Debtor as defined in Bankruptcy Code § 101(5).

**1.9.**    **"Claims Objection Deadline"** shall mean the Confirmation Date, or such other date as may be set by the Bankruptcy Court at the request of the Debtor [after notice and a hearing?].

**1.10.**    **"Class"** means all of the Holders of Claims or Interests having characteristics substantially similar to the other Claims or Interests and which have been designated as a class in the Plan.

**1.11.**    **"Confirmation"** means approval of the Plan by the Bankruptcy Court following the Confirmation Hearing.

**1.12.**    **"Confirmation Fund"** means the reserve to be held by the Disbursing Agent comprised of the respective amounts of cash to be contributed under the Plan by the Reorganized Debtor, on one hand, and the Debtor's equity holders, on the other hand, to be applied to the payment of Allowed Administrative Expenses and Allowed General Unsecured Claims.

**1.13.**    **"Confirmation Hearing"** means the hearing or hearings before the Bankruptcy Court to consider approval of the Plan.

**1.14.**    **"Confirmation Order"** means the order of the Bankruptcy Court approving the Plan pursuant to Bankruptcy Code § 1129.

**1.15.**    **"Creditor"** means a Holder of an Allowed Claim.

**1.16.**    **"Disbursing Agent"** means Goldberg Weprin Finkel Goldstein LLP as the Debtor's counsel.

**1.17.**    **"Disbursing Account"** means the interest-bearing escrow account established by the Disbursing Agent for deposit of the Confirmation Funds needed to pay all Allowed Claims and Administrative Expenses.

**1.18.** "**District Court**" means the United States District Court for the Eastern District of New York.

**1.19.** "**Disputed Claim**" means any Claim which is the subject of a motion to amend the Debtor's schedules, or to which the Debtor or the Disbursing Agent has filed an objection or request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules prior to the Confirmation Hearing.

**1.20.** "**Effective Date**" means the date no later than April 17, 2021 (or such later date as the Debtor and the Reorganized Debtor may agree) on which the Plan shall become effective in accordance with its terms and the closing of the Revised Sale shall occur, which shall occur no later than April 17, 2021.

**1.21.** "**Exculpated Parties**" means the Debtor, the Debtor's principals Alexander Noghreh and Jonathan Bijari, ZB Pearl, and ZB Pearl's principals Danny Zelouf and Jason Behfarin.

**1.22.** "**Exit Facility**" means the acquisition and mortgage financing to be obtained by the Reorganized Debtor in order to consummate the Revised Sale Contract.

**1.23.** "**Final Order**" means an order entered by the Bankruptcy Court as to which the time to appeal has expired and as to which no appeal, petition to appeal, or motion for reargument or rehearing has been filed and no stay of or injunction against such order is in effect.

**1.24.** "**General Unsecured Claim**" means a Claim of any creditor that is not entitled to priority under Sections 503(b) and 507(a) of the Bankruptcy Code.

**1.25.** "**Petition Date**" means April 28, 2020.

**1.26.** "**Priority Tax Claim**" means a Claim of any federal or state taxing authority under Section 507(a)(8) of the Bankruptcy Code.

1.27.    **"Proof of Claim"** means a written statement filed pursuant to and in accordance with the Bankruptcy Rules, which sets forth a Creditor's Claim and conforms substantially to the appropriate official form.

1.28.    **"Reorganized Debtor"** means ZB Pearl LLC, a New York limited liability company (also referred to in this Plan as "**ZB Pearl**"), in its capacities as: (a) the funder of certain claims to be treated and obligations to be satisfied under the Plan, and (b) the Debtors' designee to acquire the Property pursuant to the Revised Sale Contract and the Settlement.

1.29.    **"Settlement"** means the negotiated resolution of the Debtor's contract dispute with the Seller and the pending Appeal, pursuant to this Plan, the Revised Sale Contract and the related letter agreement of even date, collectively annexed hereto as <u>Exhibit</u> "A".

1.30.    **"U.S. Trustee Fees"** means fees and charges payable to the United States Trustee for this judicial district pursuant to 28 U.S.C. § 1930.

## ARTICLE II

## CLASSIFICATION OF CLAIMS AND INTERESTS

All Claims as defined hereunder are classified as follows:

2.1.    <u>**Class 1**</u> – Allowed Administrative Claims.

2.2.    <u>**Class 2**</u> – Allowed Claim of the Seller for the agreed purchase price under the Revised Sale Contract.

2.3.    <u>**Class 3**</u> – Allowed Priority Tax Claims, if any.

2.4.    <u>**Class 4**</u> – Allowed General Unsecured Claims.

2.5.    <u>**Class 5**</u> – Allowed Equity Interests of the Debtor.

## ARTICLE III

## MEANS FOR IMPLEMENTING THE PLAN

**3.1**  **Approval of Settlement**.  The Plan shall be implemented through approval of the Settlement, funding by the Reorganized Debtor and the Debtor's equity holders of certain distributions to be made pursuant the Plan, and the approval and consummation of the Revised Sale Contract to effectuate the Settlement.   Under the Settlement, the Debtor will retain the benefit of the prior deposits under the Original Contract to the extent of $895,000, with the opportunity to complete the acquisition of the Property by designating the Debtor as the purchaser of the Property at the reduced price set by the Revised Sale Contract and applying the deposit to the purchase price in addition to the consideration to be provided by the Reorganized Debtor to complete the Revised Sale and the contributions by the Reorganized Debtor and the Debtor's equity holders of fund to satisfy Allowed Administrative Expenses and ratable distributions to Allowed General Unsecured Claims pursuant to the Plan.  In the Debtor's view, the Revised Sale Contract effectively resolves the disputes regarding the Property sale and allows for a successful conclusion of the Chapter 11 case.  Thus, approval and confirmation of the Plan shall also constitute approval of the Settlement for purposes of Bankruptcy Rule 9019(a) and Section 1123(b)(3) of the Bankruptcy Code.

**3.2**  **Closing.**  The Debtor's principals were fortunate to align themselves with a new investment group – the principals of ZB Pearl, with whom they had not previously been associated – to participate in the negotiations and execution of the Revised Sale Contract.  In addition to amounts allocable to the Revised Sale price as well as contributions to the Debtor's estate to fund the Plan, the new investment group has agreed to cause ZB Pearl to fund an additional deposit of $853,000 toward the deposit and the purchase price of the Property under

the Revised Sale Contract. On the Effective Date, the Debtor and the Reorganized Debtor shall convene a closing with the Seller to consummate the Reorganized Debtor's purchase of the Property in accordance with the Revised Sale Contract, as authorized by the Settlement.

      **3.3**    **Acquisition of the Property.** The Seller shall deliver title to the Property in accordance with the Revised Sale Contract, and the Reorganized Debtor shall become the fee owner as of the Effective Date. The Confirmation Order shall provide that the acquisition of the Property is effective immediately, without any further stays under the Bankruptcy Rules.

      **3.4**    **Authority to Enter into Exit Facility.** Efforts to finalize the Exit Facility are fluid and ongoing, but will be completed prior to the Confirmation Hearing. By the virtue of Confirmation of the Plan, the Reorganized Debtor shall be authorized to enter into the Exit Facility to consummate the Plan and the purchase of the Property.

      **3.5**    **Dismissal of Appeal.** On the Effective Date and upon the consummation of the Revised Sale Contract, the Debtor shall file a stipulation executed by it and the Seller dismissing the Appeal in the District Court without further contingency.

      **3.6**    **Transfer Taxes.** The transfer of the Property and related Exit Facility by and provided for by the Plan shall be exempt from the payment of transfer, stamp, deed, mortgage recording or similar taxes, since all of the transactions are being done and constitute a "transfer under and in furtherance of a confirmed plan of reorganization in bankruptcy." Thus, (i) the transfer of the Property to the Reorganized Debtor; and (ii) the issuance and making of the Exit Facility shall be exempt from the payment of all transfer, stamp, deed, and mortgage recording taxes or similar taxes imposed by the City and State of New York, respectively, pursuant to 11 U.S.C. §1146(a).

3.7    **Mutual Releases.**  On the Effective Date and upon consummation of the Revised Sale Contract, the parties shall exchange mutual releases as follows: Seller, on the one hand, and Debtor together with Jonathan Bijari and Alex Nogreh, on the other hand, shall be deemed to have released and discharged all claims of whatever nature, known and unknown, whether suspected or unsuspected, liquidated or unliquidated, contingent or liquidated, asserted and/or unasserted, which they have or may have against each other, the partners of Seller, the heirs, legal representatives, successors and/or assigns of any of the foregoing, and the attorneys and other professionals of the released parties, which claims exist or may have existed or accrued prior to the Effective Date.  For the avoidance of doubt, the Seller and its partners, successors and/or assigns, attorneys or other professionals are fully released upon the Effective Date.

## ARTICLE IV

## TREATMENT OF CLAIMS

4.1.    Class 1 – **Administrative Claims**

A.    **Professional Fees.**  The Debtor's legal counsel retained in the Chapter 11 case (Goldberg Weprin Finkel Goldstein LLP) shall file a final fee application for all accrued compensation and expenses in accordance with the Bankruptcy Code and Rules no later than ten (10) days after Effective Date of the Plan, subject to the agreed voluntary cap on the amount that may be paid to it in the net amount of $75,000 *after* deduction of the unused portion of the previously-paid retainer.  The capped Professional Fees as awarded by the Bankruptcy Court shall be paid in full by the Disbursing Agent from the Confirmation Fund on the Effective Date or, such later time as a particular fee application(s) is heard and ruled upon by the Bankruptcy Court.  The funds necessary to pay such allowed capped Professional Fees in the sum of

$75,000, shall be deposited by the Reorganized Debtor and the Debtor's equity holders in escrow with the Disbursing Agent not later than the completion of the Confirmation Hearing.

B.    **Other Administrative Claims**.    The Debtor does not believe that any other Administrative Claims are outstanding and unpaid.    Obligations of the Debtor incurred in the ordinary course of the Bankruptcy Case were paid in the ordinary course of its business.    In the unlikely event that other Administrative Claims arise, they will be paid from contributions of the Debtor's equity holders.

**4.2**    **Class 2 –Claim of the Seller**

The Claim of the Seller, representing the balance of the purchase price of the Property in the amount of $6,785,000 pursuant to the Revised Sale Contract (subject to adjustments and apportionments under the contract), shall be satisfied in full by its receipt on the Effective Date of the purchase price for the Revised Sale from the Reorganized Debtor.

**4.3**    **Class 3 – Priority Claims**

No proofs of Priority Claims were filed prior to the Bar Date, and the Debtor does not believe any Priority Claims are outstanding and unpaid.    In the unlikely event that Priority Claims arise, they will be paid from contributions of the Debtor's equity holders.

**4.4**    **Class 4 – General Unsecured Claims**

One the Effective Date, the holders of Allowed Class 4 General Unsecured Claims shall receive *pro rata* distributions from the pool of funds contributed by the Reorganized Debtor and the Debtor's equity holders in the amount of $25,000 to be established on the Effective Date.

**4.5**    **Class 5 – Equity Interests**

The Debtor's pre-petition Equity Interests shall be deemed canceled and revoked in favor of the establishment of a new membership structure in the Reorganized Debtor.    The new

members of the Reorganized Debtor shall be Alex Noghreh, Jonathan Bijari, Jason Behfarin and Danny Zelouf, or their affiliated entities.  Jason Behfarin and Danny Zelouf (or their affiliated entities) shall be the managers of the Reorganized Debtor.  Alex Noghreh and Jonathan Bihari, whether individually or through affiliate entities) shall not be managers of the Reorganized Debtor, and shall hold only a non-managerial economic interest in the Reorganized Debtor in proportion to their contribution to the Reorganized Debtor but not exceeding in the aggregate more than 25% of the membership interests of ZB Pearl.

**ARTICLE V**

**CONDITIONS PRECEDENT TO EFFECTIVENESS OF THE PLAN**

**5.1**      This Plan is conditioned upon entry of the Confirmation Order confirming the Plan, approving the Settlement, authorizing the Debtor and Reorganized Debtor to proceed with the Settlement and Revised Sale Contract, and approving and authorizing the performance of the Debtor, the Reorganized Debtor, and the Debtor's equity holders as provided in this Plan.

**ARTICLE VI**

**PAYMENT OF DIVIDENDS**

**6.1.**      **Distribution**.  Except for direct payments to be made by the Reorganized Debtor to the Seller at Closing from the Exit Facility, and the crediting by the Seller of the portion of the original purchase deposit toward the Revised Sale, the Disbursing Agent shall pay all other distributions to Creditors in accordance with the terms hereof on the Effective Date.

**6.2.**      **Disputed Claims**.      No distribution shall be made on account of a Disputed Claim until such Disputed Claim becomes an Allowed Claim pursuant to a Final Order.  The Debtor shall file objections to any Disputed Claims prior to the Claim Objection Deadline.  In the event that an objection to a Disputed Claim remains unresolved as of the Effective Date, the

Disbursing Agent shall establish a cash reserve (the "**Disputed Claims Escrow Fund**") in an amount not less than the projected distribution (or ratable distribution, as may be the case) required to pay the then Disputed Claim.  No payment or distribution shall be made with respect to a Disputed Claim until all objections have been settled or adjudicated pursuant to a Final Order.  If the Disputed Claims Escrow Fund exceeds the full amount of a Disputed Claim(s), all excess funds will be returned to the party that provided such funds in consideration of this Plan.

## ARTICLE VII

## EXECUTORY CONTRACTS

**7.1.**    In connection with the acquisition of the Property, the Revised Sale Contract is deemed assumed or approved pursuant to the Settlement and this Plan.  The Debtor does not believe it is a party to any other executory contract, and therefore the Debtor and Reorganized Debtor do not anticipate the filing of any cure claims.

## ARTICLE VIII

## EFFECT OF CONFIRMATION; INJUNCTION AND EXCULPATION

**8.1.**    **Injunction**.  **Any and all persons or entities holding Claims against or equity interests in the Debtor are hereby permanently enjoined from instituting any action or proceeding in law or equity against the Debtor or the Reorganized Debtor relating to the Property, the Settlement, the Revised Sale Contract. and the Revised Sale.**

**8.2.**    **Exculpation.**    **Notwithstanding anything contained in the Plan to the contrary, as of the Effective Date, to the maximum extent permitted by applicable law, each and all of the Exculpated Parties shall not have or incur any liability for any claim, obligation, suit, judgment, damage, demand, debt, right, cause of action, remedy, loss, and liability for any claim in connection with or arising out of any acts or omissions of such**

Exculpated Party taken or not taken in connection with the filing of the Bankruptcy Case, the Settlement, and/or taken or not taken between the Petition Date and the Effective Date in connection with the administration of the Bankruptcy Case, the Settlement, the negotiation and filing of the Plan or the Disclosure Statement, any exhibits, attachments, or amendments to the Plan or the Disclosure Statement, or any document implementing or consummating the Plan, the Settlement, the filing of the Bankruptcy Case, the settlement of Claims, the resolution or renegotiation of executory contracts and leases, the pursuit of confirmation of the Plan, the negotiation and approval of the Settlement, the consummation of the Plan or the administration of the Plan or property to be distributed under the Plan, or the transactions and occurrences in furtherance of any of the foregoing, except for any willful misconduct, gross negligence or intentional fraud as determined by a Final Order to have been committed by such Exculpated Party with respect to any of such party's respective obligations under or in connection with the Plan and the transactions contemplated by the Plan.  The Exculpated Parties in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under the Plan and the transactions contemplated by the Plan and shall neither have nor incur any liabilities for acting or forbearing from acting pursuant to the advice of counsel. Nothing contained herein shall relieve any person from their duties and responsibilities to perform under the Plan, including to make the payments required by the terms of the Plan.

8.3.    **Reorganized Debtor Not Assuming Obligations of the Debtor**.  Except for the obligations imposed on it by the Plan, the Reorganized Debtor does not assume, and shall not be liable for, any Claims against or obligations owed, previously owed, or owing in the future by the Debtor.

## ARTICLE IX

## RETENTION OF JURISDICTION

**9.1.**    The Bankruptcy Court shall retain jurisdiction over the Debtor's bankruptcy case following confirmation for, among other things, the following purposes:

9.1.1    Allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the priority, amount, or allowance of Claims;

9.1.2    Decide and resolve all matters related to the granting and denying, in whole or in part, any applications for Professional Fees;

9.1.3    Ensure that distributions to holders of Allowed Claims are effectuated pursuant to the provisions of the Plan;

9.1.4    Adjudicate any motions, adversary proceedings, applications or contested matters that may be pending on the Effective Date;

9.1.5    Enter and implement such Orders as may be necessary or appropriate to execute, implement, enforce or consummate the provisions of the Plan, including but not limited to the Settlement;

9.1.6    Adjudicate any and all disputes arising from or relating to distributions under the Plan or any transactions contemplated herein;

9.1.7    Consider any modifications of the Plan to cure any defect or omission, or to reconcile any inconsistency with the Confirmation Order; and

9.1.8    Enter an Order concluding or closing the Chapter 11 Cases.

# ARTICLE X

# GENERAL PROVISIONS

**10.1.    Payment Dates**.  Whenever any payment or distribution to be made under this Plan shall be due on a day other than a business day, such payment or distribution shall instead be made on the following business day.

**10.2.    Payment of U.S. Trustee Fees**.  The Debtor shall pay all U.S. Trustee Fees through entry of a final decree closing the Bankruptcy Case pursuant to 11 U.S.C. § 350.

**10.3.    Headings**.  The headings in this Plan are for reference purposes only and shall not limit or otherwise affect the meaning of the terms of this Plan.

**10.4.    Modification of the Plan**.  Prior to the entry of the Confirmation Order, the Debtor, with the consent of the Reorganized Debtor, reserves the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend, modify, revoke, or withdraw this Plan, with the prior written consent of the Committee, including amendments or modifications to satisfy Section 1129(b) of the Bankruptcy Code; and (2) after the entry of the Confirmation Order, the Reorganized Debtor may, upon order of the Court, amend or modify this Plan, in accordance with Section 1127(b) of the Bankruptcy Code.

**10.5.    Immediate Effect of Confirmation Order**.  Notwithstanding Bankruptcy Rules 3020(e), 6004(h) or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon the Debtor and any and all Holders of Claims or Interests (regardless of whether such Claims or Interests are deemed to have accepted or not accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory

Contracts with the Debtors.  The stay of enforceability of a confirmation order pursuant to Bankruptcy Rule 3020(e) shall not apply to Confirmation Order, which shall be enforceable according to its terms immediately upon entry absent further order of the Court.

10.6.  **Governing Law**.  Except to the extent that any provision of the Bankruptcy Code, the Bankruptcy Rules or another federal law is applicable, and subject to the provisions of any contract instrument, release or other agreement or document entered into in connection with the Plan, the rights and obligations arising under the Plan shall be governed by, and construed in accordance with, the internal laws of the State of New York, without regard to its principles of conflicts of laws.

10.7.  **No Retiree Benefit Plan Payments**.  Lacking any plan or program for the payment of õretiree benefitsö as that term is defined in Section 1114(a) of the Bankruptcy Code, the Debtor is not obligated pursuant to Section 1129(a)(13) of the Bankruptcy Code to pay any.

10.8.  **Further Actions; Implementation**.  Each of the Debtor and the Reorganized Debtor shall be authorized to execute, deliver, file or record such documents, contracts, instruments, releases and other agreements and take such other or further actions as may be necessary to effectuate or further evidence the terms and conditions of this Plan.

10.9.  **The Debtor After the Effective Date.**  The Debtorøs rights and interests in the Original Contract, as modified by the Revised Sale Contract, shall vest in the Reorganized Debtor, and the Debtor will likely dissolve following the closing of the Chapter 11 case.

10.10.  **Final Decree and Closure of the Bankruptcy Case**.  After the occurrence of the Effective Date, the Debtor may file a motion for a final decree closing the Bankruptcy Case at the earliest practicable time determined by the Debtor to be reasonable and appropriate.

10.11. **<u>Conflicts in Terms of Documents</u>**.  The terms of this Plan shall govern in the event of any inconsistency with the summaries of this Plan set forth in the Disclosure Statement. In the event of any inconsistency or ambiguity between and among the terms of this Plan, the Disclosure Statement, and the Confirmation Order, the terms of the Confirmation Order shall govern and control.

10.12. **<u>Reservation of Rights</u>**.  Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court has entered the Confirmation Order. None of the filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by the Debtor or the Reorganized Debtor with respect to the Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of such party Debtor with respect to the Holders of Claims or equity interest prior to the Effective Date.

10.13. **<u>Successors and Assigns</u>**.  The rights, benefits, and obligations of any person or entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, affiliate, officer, director, agent, representative, attorney, beneficiary, or guardian, if any, of each Entity.

10.14. **<u>Service of Documents</u>**.  All notices, requests, and demands to or upon the Debtors to be effective shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided in the Plan, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

|                          |                                                |
|--------------------------|------------------------------------------------|
| If to the Debtor:        | Goldberg Weprin Finkel Goldstein LLP           |
|                          | Attn: Kevin J. Nash, Esq.                      |
|                          | 1501 Broadway, 22nd Floor                 |
|                          | New York, NY 10036                             |
|                          | Tel.: 213-301-6943                             |
|                          | Fax: 212-221-6532                              |
|                          | Email: knash@gwflaw.com                        |
|                          |                                                |
| If to the Reorganized Debtor: | Pryor Cashman LLP                         |
|                          | Attn: Richard Levy, Jr., Esq.                  |
|                          | 7 Times Square                                 |
|                          | New York, NY 10036-6569                        |
|                          | Tel.:    (212) 326-0886                        |
|                          | Fax:    (212) 326-0806 or (212) 798-6393       |
|                          | Email: rlevy@pryorcashman.com                  |

After the Effective Date, the Debtor shall have the authority to send a notice to persons and entities that continue to receive documents pursuant to Bankruptcy Rule 2002, which shall require each such person or entity to file a renewed request to receive documents pursuant to Bankruptcy Rule 2002.  After the Effective Date, the Debtor is authorized to limit the list of persons and entities receiving documents pursuant to Bankruptcy Rule 2002 to those who have filed such renewed requests.

10.15.  **Entire Agreement**.  Except as otherwise indicated, the Plan (including, for the avoidance of doubt, the Plan Supplement) supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

10.16.  **Non-Severability**.  The provisions of the Plan are mutually dependent and non-severable.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan is: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan, such that it may not be deleted or modified without the consent of the Reorganized Debtor; and (3) non-severable and mutually dependent.

**10.17.** <u>**Votes Solicited in Good Faith**</u>.  Upon entry of the Confirmation Order, the Debtor will be deemed to have solicited acceptances of on the Plan in good faith and in compliance with the Bankruptcy Code.  Pursuant to Section 1125(e) of the Bankruptcy Code, the Debtor, the Reorganized Debtor and each of its respective agents, representatives, members, principals, shareholders, officers, directors, employees, advisors, and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code in the offer, issuance, sale, and purchase of equity interests of the Debtor's principals in the Reorganized Debtor under the Plan, and, therefore, that such parties, individuals, or entities will have no liability for the violation of any applicable law, rule, or regulation governing the solicitation of votes on the Plan or the offer, issuance, sale, or purchase of the equity interests of the Debtor's principals in the Reorganized Debtor under the Plan.

**10.18.** <u>**Waiver or Estoppel**</u>.  Each Holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, Secured or not subordinated by virtue of an agreement made with the Debtor or the Reorganized Debtor, or their respective counsel, or any other Person or Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers filed with the Bankruptcy Court prior to the Confirmation Date.

**10.19.** <u>**Failure of Confirmation of the Plan**</u>.  In the event that  the Plan is not confirmed by the Bankruptcy Court in form and content satisfactory to ZB Pearl and pursuant to a Confirmation Order in form and content satisfactory to ZB Pearl, the Disbursing Agent shall release from escrow, upon ZB Pearl's written request, and remit to ZB Pearl and the Debtor's equity holders the respective amounts of cash deposited by them in connection with the proposed

but unsuccessful confirmation of the Plan.  In such event, ZB Pearl shall have no obligations to

the Debtor, its equity holders or the Debtor's creditors.

Dated: New York, New York
        February 25, 2021

GOLDBERG WEPRIN FINKEL GOLDSTEIN LLP
*Attorneys for the Debtor*
1501 Broadway, 21st Floor
New York, NY 10036

By:      /s/ Kevin J. Nash, Esq.


**Debtor**:
Pearl 53 LLC

By: /s/ Jonathan Bijari
     Authorized Signatory, as Member

**AGREED AS DEBTOR'S EQUITY HOLDERS:**

/s/ Alex Noghreh

/s/ Jonathan Bijari


**AGREED AS REORGANIZED DEBTOR ONLY**:
ZB Pearl LLC

By:  /s/ Danny Zelouf
     Authorized Signatory